SMOTHERMAN v. UNITED STATES.

GATELY v. UNITED STATES.

BRACKHAHN v. UNITED STATES.
Nos. 4111–4113.

United States Court of Appeals
Tenth Circuit.
Dec. 30, 1950.

Nathan Witt, New York City, for appellants.

Everett M. Grantham, U. S. Atty., Earl C. Iden, Albuquerque, N. M., and Henry A. Kiker, Santa Fe, N. M., for appellee.

Before PHILLIPS, Chief Judge, and BRATTON, and MURRAH, Circuit Judges.

MURRAH, Circuit Judge.

These are appeals from judgments of the United States District Court of New Mexico in criminal contempt proceedings.

Upon trial to the court, each of the appellants was found guilty of criminal contempt for violations of a restraining order issued in the case of The Atchison, Topeka and Santa Fe Railway Company v. Sillampa, et al., and sentenced to pay a fine of $500.00 and imprisonment for 90 days. Appellant Smotherman was also found guilty of criminal contempt for publishing and circulating statements "which tended to and did obstruct the due administration of justice and tended to bring the court into disrepute", and was given an additional sentence of a $500.00 fine and 90 days imprisonment. All the prison sentences were suspended upon the condition that future orders of the court be obeyed.

To reverse the judgments each of the appellants contend that the complaint failed to state facts sufficient to constitute contempt, in that the restraining order was void under the provisions of Rule 65 (b) and (d), 28 U.S.C.A., and in violation of the Norris-LaGuardia Act, 29 U.S.C.A. § 101 et seq.

Rule 65 (b) provides: "No temporary restraining order shall be granted without notice to the adverse party unless it clearly appears from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant before notice can be served and a hearing had thereon. Every temporary restraining order granted without notice shall be indorsed with the date and hour of issuance; * * * shall define the injury and state why it is irreparable and why the order was granted without notice * * *". And, subdivision (d) requires that "every restraining order" issued pursuant to the rule "shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained; * * *".

It is said that the restraining order is void because the complaint and evidence upon which it was issued, failed to show that immediate and irreparable injury would result before notice could be given, as required by subdivision (b); and, because the order, when issued, failed to define the injury, state why it was irreparable and why it was granted without notice, as required by subdivision (d).

The verified complaint, which was the basis for the restraining order, alleged that the defendants had, with others, conspired to prevent the plaintiff Railroad Company from operating its trains under its franchise as a public carrier from Loving to Carlsbad, New Mexico; that in furtherance of such conspiracy the defendants had obstructed the tracks of the Company by sitting, standing and lying thereon so that the trains could not proceed without causing injury to the defendants; that the defendants placed or caused to be placed, rocks and stones upon the track in order to wreck or derail the trains, all of which caused the Railroad Company to abandon its scheduled run.

The restraining order recited that the defendants were unlawfully preventing the plaintiff railroad company from operating its trains as required by law under its franchise, by sitting, lying and standing upon the tracks; that such acts would continue unless restrained; and, that immediate and irreparable injury, loss and damage would result to the railroad before notice could be served and a hearing had on the motion for a preliminary injunction.

■ The complaint, the affidavits, and the restraining order issued pursuant thereto, irrefutably answer the contentions as to their sufficiency under Rule 65 (b) and (d). Indeed, it is difficult to imagine facts more appropriate for the relief granted under the rule, or how an order could be more precisely drawn to meet the mandatory language of subdivision (d). Cf. Garland v. United States, 4 Cir., 182 F.2d 801; In re Rumsey Mfg. Corp., D. C., 9 F.R.D. 93.

Appellants next contend that at the time the restraining order was issued they were engaged in a labor dispute with certain potash companies in Carlsbad; that the acts complained of were committed in an effort to bring pressure on the potash companies, and were protected against injunctive process by the Norris-LaGuardia Act. See Section 101 et seq., 29 U.S.C.A.

■ The verified complaint, upon which the restraining order was issued, alleged that all defendants were strangers to the railroad Company and there was no relationship between the parties, contractual or otherwise. This allegation was to be taken as true until denied. The restraining order was not permanent—it was issued only to maintain status quo and protect the rights of the parties until a hearing could be had on the motion for a preliminary injunction five days later.

■ Appellants had no right to determine for themselves whether the court had jurisdiction to restrain their acts. That was a matter for the court to decide at the hearing on the motion. If at that time, the court found it was deprived of jurisdiction under the Norris-LaGuardia Act, appellants were then entitled to have the restraining order set aside and injunctive relief denied, but until it was set aside by orderly judicial process they were bound at their peril to heed its mandate. United States v. United Mine Workers, 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884; Howat v. Kansas, 258 U.S. 181, 42 S.Ct. 277, 66 L.Ed. 550; United States v. Shipp, 203 U.S. 563, 27 S.Ct. 165, 51 L.Ed. 319.

■ At the hearing on the motion for permanent injunctive relief, the court held that no labor dispute existed between the Railroad Company and the appellants, but took the position that if one did exist the Norris-LaGuardia Act did not prevent injunctive relief where, as here, violence was involved. A permanent injunction was granted and no appeal has been taken from that order. But, even if the Norris-LaGuardia Act was applicable to prohibit injunctive relief, appellants would still be subject to contempt for violation of an "outstanding and unreversed" order of the court. United States v. United Mine Workers, supra, 330 U.S. at page 295, 67 S. Ct. at page 697.

The verified complaint upon which the restraining order was issued, the supporting affidavits and the order itself were attached to and made a part of the complaint in the contempt proceedings, and clearly stated facts sufficient to constitute contempt.

Appellant Smotherman also appeals from the judgment of the court finding him guilty of criminal contempt for publishing and circulating, "in the press, over the radio and in the form of a telegram to the President of the United States, to the Congressional Delegation from New Mexico and to the Attorney General of the United States", the following statement:

"Judge Colin Neblett's issuance of illegal restraining order in New Mexico potash strike at Carlsbad is contrary to Norris-LaGuardia Act and brands him as a tool of big industrialists, unfit to continue holding that high office. Any judge who refuses or fails to appraise himself of facts and conducts his work on labor disputes in open court is a menace to our democracy. Because of orders issued Nov. 25, 1949, in civil action file No. 1582 at Albuquerque, N. M., we urge a complete investigation which

we feel confident will substantiate our charge that he should be removed from the bench." The trial court concluded that this statement constituted contempt as a matter of law.

Section 401, 18 U.S.C.A., provides that "A court of the United States shall have power to punish by fine or imprisonment, at its discretion, such contempt of its authority, and none other, as—(1) Misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice; * * *".

■ Applying the clear and present danger test, the question is whether the publication had the effect of directly interfering with or influencing the orderly and impartial administration of justice. Bridges v. State of California, 314 U. S. 252, 62 S.Ct. 190, 86 L.Ed. 192; Pennekamp v. State of Florida, 328 U.S. 331, 66 S.Ct. 1029, 90 L.Ed. 1295; Craig v. Harney, 331 U.S. 367, 67 S.Ct. 1249, 91 L.Ed. 1546. The publication did not in and of itself bring about that result. The resolution of the question lies in an objective appraisal of the particular words in the setting in which they were uttered. Bridges v. State of California, supra, 314 U.S. at page 271, 62 S.Ct. 190.

■ The publication related to a proceeding pending before the court on which the court alone had the duty to hear and decide. There was no jury to be intimidated or influenced. The "substantive evil" was an attack upon the judge, and at most expressed the view that he was unfit to try the matter at issue and should be impeached. While the remarks were, of course, vexatious and irritating, to say that they had the effect of intimidating, coercing or influencing the judge from his course of duty is to fail to accord him that strength of character and judicial fortitude common to the judiciary and so vividly exemplified by the long record of his judicial acts. Indeed, the trial judge expressed the view "that no words such as were used in this telegram could destroy, injure or impair the high standing Judge Neblett has throughout this entire District and wherever he is known."

We conclude that the utterance and publication of the telegram did not constitute contempt in law or in fact.

The judgments of the court adjudging these appellants guilty of contempt for violation of the restraining order are affirmed. The judgment of the court adjudging appellant Smotherman guilty of obstructing the administration of justice is reversed with directions to dismiss.

PHILLIPS, Chief Judge, concurs in the result.

BRATTON, Circuit Judge.

I concur in that part of the opinion affirming the judgments of the trial court determining that appellants were guilty of criminal contempt for violations of the restraining order entered in the civil action. But I would also affirm the judgment determining that appellant Smotherman was guilty of criminal contempt in publishing and circulating the statements concerning the judge who entered the restraining order in the civil action.